**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

COMMODITY FUTURES TRADING
COMMISSION,

        Plaintiff,

        v.

GEORGE D. HUDGINS, individually and dba
GEORGE D. HUDGINS, L.L.C.

        Defendant

mc 08-116

CIVIL ACTION NO.: 6-08 CV 187

A TRUE COPY I CERTIFY
DAVID J. MALAND, CLERK
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

By: _____ *Mike Lantz* _____

FILED
JUN 18 2008
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

**CONSENT ORDER OF PRELIMINARY
INJUNCTION AND OTHER EQUITABLE RELIEF**

Plaintiff, the Commodity Futures Trading Commission ("Commission") filed, on May 13, 2008, a Complaint for Permanent Injunction, Civil Monetary Penalties, and Other Equitable Relief ("Complaint") against Defendant, George D. Hudgins, individually, and dba George D. Hudgins, L.L.C., (hereinafter collectively referred to as "Defendant"), alleging violations of the antifraud provisions and registration requirements of the Commodity Exchange Act, as amended ("Act" or "CEA"), 7 U.S.C. §§ 1 *et seq.* (2002), and the Regulations promulgated thereunder ("CFTC Regulations"), 17 C.F.R. §§ 1.1 *et seq.* (2008). The Commission also moved pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, for a preliminary injunction.

Based upon the attached written consent of Defendant to this Order of Preliminary Injunction and Other Equitable Relief ("Order"), the Court finds, for the purpose of this Order, that Defendant acknowledges service of the Summons and Complaint in this action. The Court further finds that Defendant, without admitting or denying the allegations of the Complaint except as to jurisdiction and venue as stated below, consents to the entry of this Order. The

1

Case 6:08-cv-00187-LED   Document 2362   Filed 06/09/2008   Page 2 of 19

Court also finds that Defendant's consent to this Order is entered into voluntarily and that no promise or threat has been made by the CFTC, or any member, officer, agent, or representative of the CFTC, to induce Defendant to consent to this Order.

## I.

## JURISDICTION AND VENUE

**THE PARTIES AGREE AND THE COURT FINDS THAT:**

1.     For the purposes of this Order, this Court has jurisdiction over Defendant and the subject matter of this action pursuant to Section 6c of the Act, 7 U.S.C. §13a-1, which authorizes the Commission to seek injunctive relief against any person whenever it shall appear that such person has engaged, is engaging or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation or order thereunder.

2.     Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. §1.13a-1(e), in that Defendant is found, inhabits or transacts business in this district, and the acts and practices in violation of the Act have occurred, are occurring or are about to occur within this district.

## II.

## RELIEF GRANTED

### *Prohibition from Violations of the*
### *CEA and Commission Regulations*

3.     **IT IS HEREBY ORDERED** that Defendant, his officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with him, are enjoined and restrained, until further order of this Court, from directly or indirectly:

> a.     In or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, made, or to be made, for or

2

Case 6:08-cv-00837-LED    Document 2562    Filed 06/06/2008    Page 3 of 19

on behalf of any other persons, where such contract for future delivery

was or could be used for (A) hedging any transaction in interstate

commerce in such commodity or the products or byproducts thereof, or

(B) determining the price basis of any transaction in interstate commerce

in such commodity, or (C) delivering any such commodity sold, shipped,

or received in interstate commerce for the fulfillment thereof, (i) cheating

or defrauding or attempting to cheat or defraud other persons, (ii) willfully

making or causing to be made to other persons any false report or

statement thereof, and/or (iii) willfully deceiving or attempting to deceive

other persons in violation of Sections 4b(a)(2)(i)-(iii) of the CEA, 7 U.S.C.

§§ 6b(a)(2)(i)-(iii);

b.   In or in connection with an offer to enter into, the entry into, the

confirmation of, the execution of, or the maintenance of commodity

options transactions (i) cheating, defrauding or deceiving, or attempting to

cheat, defraud, or deceive other persons in any manner whatsoever, and/or

(ii) willfully making or causing to be made any false report or statement,

in violation of Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and CFTC

Regulations 33.10(a)-(c), 17 C.F.R. § 33.10(a)-(c);

c.   Using the mails or instrumentalities of interstate commerce in or in

connection with his business as a commodity pool operator ("CPO") while

failing to register with the Commission as a CPO and CTA, in violation of

Section 4m(1) of the CEA, 7 U.S.C. § 6m(1); and

> d. While acting as a CPO, employing a device, scheme or artifice to defraud
> pool participants, clients and prospective pool participants or clients or
> engaging in a transaction, practice or course of business which operates as
> a fraud or deceit upon pool participants, clients and prospective pool
> participants or clients, in violation of Section 4$\underline{o}$(1) of the CEA, 7 U.S.C. §
> 6$\underline{o}$(1), and CFTC Regulation 4.41(a), 17 C.F.R. § 4.41(a).

4. **IT IS FURTHER ORDERED** that the injunctive provisions of this Order shall
be binding upon Defendant, upon any person acting in the capacity of agent, servant, employee,
or attorney of Defendant, and upon any person who receives actual notice of this Order by
personal service or otherwise insofar as he or she is acting in active concert or participation with
Defendant.

### *Appointment of Receiver*

5. IT IS FURTHER ORDERED that Mr. Kelly Crawford of the law firm of Scheef
& Stone, L.L.P. is appointed as the Receiver for Defendant's Assets, as defined under the SRO,
with full powers of an equity receiver. The Court makes this appointment of a Receiver after
having duly considered the qualifications and experience of said Receiver and determining said
Receiver qualified as reflected in Mr. Crawford's *curriculum vitae* setting forth his qualifications
and experience, and his fee schedule attached hereto as Exhibit A. The Receiver shall be the
agent of this Court in acting as Receiver under this Order.

6. The "Receiver Estate" shall consist of all Defendant's Assets, as that term is
defined in Paragraph 11 of the SRO, that are under the Receiver's possession, custody, or control
or, per the SRO, should be under the Receiver's possession, custody, or control. No person

4

Case 6:08-cv-00837-LED   Document 262   Filed 06/22/008   Page 5 of 19

holding or claiming any position of any sort with the Receiver Estate shall possess any authority to act by or on behalf of any of the Receiver Estate, except as authorized by the Receiver.

### Powers of Receiver

7.      **IT IS FURTHER ORDERED** that the Receiver shall have and possess all powers and rights to administer and manage the Receiver Estate in the Receiver's discretion, including assets held by third parties that are subject to the SRO, and take such action as approved by the Court, as described below:

      a.      The Receiver shall make a determination of value of the Receiver Estate, including, but not limited to, making a determination of the account values for all pool participants or prospective pool participants or clients or investors accounts controlled or managed by Defendant;

      b.      The Receiver shall take exclusive custody, control, and possession of the Receiver Estate. Further, the Receiver shall have full power to sue for, collect, receive and take possession of all goods, chattels, rights, credits, moneys, effects, land, leases, mail, books, records, work papers, and records of accounts, including computer-maintained information, and other papers and documents of the Defendant, including documents related to pool participants or prospective pool participants or clients or investors whose interests are now held by or under the direction, possession, custody or control of the Defendant. The Receiver shall have discretion to determine that certain personal property or other assets of Defendant shall be under the Receiver's control, but shall remain in the possession or custody of Defendant;

    c.      The Receiver shall take all steps necessary to secure the business premises of Defendant, including but not limited to, 3737 Financial L.P. a/k/a Hudgins Group a/k/a Hudg-Investments, and any and all other premises under the control of Defendant;

    d.      The Receiver shall preserve, hold and manage the Receiver Estate, and perform all acts necessary to preserve the value of the Receiver Estate, in order to prevent any loss, damage or injury to pool participants or prospective pool participants or clients or investors;

    e.      The Receiver shall prevent the withdrawal or misapplication of funds entrusted to Defendant, and otherwise protect the interests of pool participants or prospective pool participants or clients or investors;

    f.      The Receiver shall manage and administer Defendant's businesses, including but not limited to, 3737 Financial L.P. a/k/a Hudgins Group a/k/a Hudg-Investments, by performing all acts incidental thereto that the receiver deems appropriate, including hiring or dismissing any and all personnel or suspending operations;

    g.      The Receiver shall collect all money owed to the Receiver Estate;

    h.      The Receiver shall initiate, defend, compromise, adjust, intervene in, dispose of, or become a party to any actions or proceedings in state, federal or foreign court necessary to preserve or increase the assets of Defendant or to carry out his or her duties pursuant to this Order or the SRO;

6

i.    The Receiver shall choose, engage and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order;

j.    The Receiver shall issue subpoenas to obtain documents and records pertaining to the Receiver Estate, and conduct discovery in this action on behalf of the Receiver Estate; and

k.    The Receiver shall open one or more bank accounts as designated depositories for funds of the Defendant. The Receiver shall deposit all funds of the Defendant in such designated accounts and shall make all payments and disbursements from the Receivership Estate from such accounts.

l.    The Receiver shall make payments and disbursements from the Receiver Estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order. The Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by Defendant prior to the date of entry of this Order or the SRO, except for payments that the Receiver deems necessary or advisable to secure assets of Defendant.

### *Delivery of Assets to Receiver*

8.    **IT IS FURTHER ORDERED** that, the Receiver is authorized to provide actual notice of the entry of this Order or the SRO to any person, agency or entity the Receiver deems appropriate by delivery of a copy of this Order or the SRO by hand, U.S. Mail, International

7

Mail, express mail, courier service, facsimile, e-mail or any other reasonable means of delivery, and that immediately upon service of this Order or the SRO upon Defendant and/or any other person or entity, and to the extent that they have not already done so, they shall forthwith or within such time as permitted by the Receiver in writing, deliver over to the Receiver:

       a.    Possession and custody of all funds, assets, property, and all other assets, owned beneficially or otherwise, wherever situated, of Defendant;

       b.    Possession and custody of documents of Defendant, including but not limited to, all books and records of accounts, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, and check registers), client lists, title documents and other papers;

       c.    Possession and custody of all funds and other assets belonging to members of the public now held by the Defendant;

       d.    All keys, computer passwords, entry codes, and combinations to locks necessary to gain or to secure access to any of the assets or documents of Defendant, including but not limited to, access to the business premises of defendant, means of communication, accounts, computer systems, or other property; and

       e.    Information identifying the accounts, employees, properties or other assets or obligations of Defendant.

Nothing in this paragraph shall require the Defendant to deliver to the Receiver any wages earned by the Defendant after the date of this order appointing the Receiver except to the extent that the wages relate, in any way, to the conduct alleged by the Commission in its Complaint in this matter,

Case 6:08-cv-00187-LED   Document 252   Filed 06/09/2008   Page 9 of 19

including but not limited to whether the origin of the wages was either directly or indirectly monies from prior, current and/or prospective pool participants of 3737 Financial L.P. aka Hudgins Group aka Hudg-Investments ("3737 Financial"), prior, current and/or prospective investors of the Defendant, or Defendant's prior and/or current agents servants, employees, attorneys, and persons in active concert or participation with the Defendant. All of Defendant's wages not delivered to the Receiver shall be deposited into a segregated account, which shall be opened by the Defendant no later than five days from the date of this order. Within the same five day period, the name, location, account number and signatories to the account shall be provided to the Receiver and the Commission. Defendant is authorized to withdraw, on a monthly basis, reasonable and necessary living expenses not to exceed $6000 per month. Each withdrawal shall be supported by an appropriate receipt and each receipt shall be provided monthly to the Receiver and the Commission. Further, the Defendant's attorney shall deliver to the Receiver and the Commission monthly account statements. The Receiver and Commission reserve the right to object to the appropriateness of any expenditure. Defendant may make further application to modify the amount of monthly withdrawals from Defendant's wage account.

9.      The Receiver shall maintain those documents delivered pursuant Paragraph 4(b) in Dallas, Texas subject to the approval of the United States Attorney's Office for the Eastern District of Texas and allow Plaintiff, Defendant, any state and Federal government agencies, their agents, servants, employees, attorneys, and persons in active concert or participation with them reasonable access to those documents.

### Report by Receiver

10.     **IT IS FURTHER ORDERED** that the Receiver shall provide an initial report to the Court and the Parties within 30 days of the date of this order, subject to such reasonable

Case 6:08-cv-00887-LEED    Document 2362    Filed 06/09/2008    Page 10 of 19

extensions as the Court may grant, that details (i) all of Defendant's Assets, as defined in the

SRO (including the location of such assets), contained in the Receiver Estate; and (ii) the account

values for all accounts of pool participants or prospective pool participants or clients or investors

controlled or managed by Defendant. The Receiver shall provide additional reports and/or

updates as he deems necessary in the course of fulfilling his duties set forth herein or as

requested by the Court.

### *Noninterference and Cooperation with Receiver*

11.    **IT IS FURTHER ORDERED** that (i) all persons, including but not limited to

the Defendant and his agents, servants, employees, assigns, attorneys, and persons in active concert

or participation with the Defendant, including any successor thereof, and any persons who receive

actual notice of this Order of the SRO by personal service or otherwise, are enjoined from in any

way interfering with the operation of the Receiver Estate or in any way disturbing the assets of

the Receiver Estate and from filing or prosecuting any actions or proceedings which involve the

Receiver or which affect the Receiver Estate, specifically including any proceeding initiated

pursuant to the United States Bankruptcy Code, except with the prior permission of this Court,

and (ii) that Defendant and his agents, servants, employees, assigns, attorneys, and persons in

active concert or participation with the Defendant, including any successor thereof, and any

persons who receive actual notice of this Order or the SRO by personal service or otherwise,

shall cooperate in every way with the Receiver and others working with the Receiver in the

administration of the Receiver Estate and provide such information related to the Receiver Estate

as the Receiver and those working with the Receiver reasonably request. Nothing in this

paragraph shall prevent the Defendant from objecting to the Receiver's control of assets which do

not relate to the conduct alleged by the Commission in its Complaint in this matter or assets which

do not or did not relate, directly or indirectly, to monies from prior, current and/or prospective pool participants of 3737 Financial or prevent the Plaintiff from responding to such objection. Further, nothing in this paragraph shall prevent the Commission from objecting to the Receiver's failure to control assets which relate to the conduct alleged by the Commission in its Complaint in this matter or assets which relate, directly or indirectly, to monies from prior, current and/or prospective pool participants of 3737 Financial, or prevent the Defendant from responding to such objection.

### *Stay of Action Against Receiver Estate*

12.    **IT IS FURTHER ORDERED** that except by leave of the Court, during the pendency of the Receiver Estate ordered herein, Defendant and all other persons and entities be and hereby are stayed from taking any action to establish or enforce any claim, right or interest for, against, on behalf of, in, or in the name of Defendant, the Receiver, any of Defendant's Assets, as defined in the SRO, the Receiver Estate, or the Receiver's duly authorized agents acting in their capacities as such, including but not limited to, the following actions:

>    a.    Commencing, prosecuting, litigating or enforcing any suit, except that actions may be filed to toll any applicable statute of limitations;

>    b.    Accelerating the due date of any obligation or claimed obligation, enforcing any lien upon, or taking or attempting to take possession of, or retaining possession of, assets or property of Defendant or any assets or property claimed by Defendant, or attempting to foreclose, forfeit, alter or terminate any of Defendant's interests in assets or property, whether such acts are part of a judicial proceeding or otherwise;

>    c.    Using self-help or executing or issuing, or causing the execution or issuance of any court attachment, subpoena, replevin, execution or other

11

Case 8:08-cv-00817-EED    Document 2-2    Filed 06/09/2008    Page 12 of 19

process for the purpose of impounding or taking possession of or

interfering with, or creating or enforcing a lien upon any assets or

property, wherever located, owned by or in the possession of Defendant,

or the Receiver, or any agent of the Receiver; and

d.    Doing any act or thing to interfere with the Receiver taking control,

possession or management of the assets or property subject to the

receivership, or to in any way interfere with the Receiver or the duties of

the Receiver; or to interfere with the exclusive jurisdiction of this Court

over the property and assets of Defendant.

This Paragraph does not stay the commencement or continuation of an action or proceeding by a

governmental unit to enforce such governmental unit's police or regulatory power.

### *Posting of Bond by Receiver*

13.    **IT IS FURTHER ORDERED** that pursuant to 28. U.S.C. § 754 upon the posting

of a bond in the amount of $10,000 by the Receiver, the Receiver shall be vested with complete

jurisdiction and control of all property, real, personal or mixed situated in different districts, with

the right to take possession thereof and shall have capacity to sue in any district without ancillary

appointment.

### *Receiver Compensation*

14.    **IT IS FURTHER ORDERED** that the Receiver and all personnel hired by the

Receiver as herein authorized, including counsel to the Receiver, are entitled to reasonable

compensation for the performance of duties pursuant to this Order and for the cost of actual out-

of-pocket expenses incurred by them, solely from the assets now held by, or in the possession or

control of, or which may be received by Defendant. The Receiver shall file with the Court and

12

Case 6:08-cv-00187-LED    Document 252    Filed 06/09/2008    Page 13 of 19

serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty (60) days after the date of this Order. The Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court. The Commission shall have the right to object to any fee application made by the Receiver.

## III.

### FORCE AND EFFECT

15. **IT IS FURTHER ORDERED** that this Order shall remain in full force and effect until further order of this Court, and that this Court retains jurisdiction of this matter for all purposes. The Statutory Restraining Order ordered by the Court on May 13, 2008, except to the extent that it is modified by this Order, shall remain in full force and effect until further order of this Court.

SO ORDERED, at Tyler, Texas on the _9_ day of June, 2008.

**UNITED STATES DISTRICT JUDGE**

13

*Consent Order Of Permanent Injunction And Other Equitable Relief* consented to and approved

for entry by:


PLAINTIFF UNITED STATES
COMMODITY FUTURES TRADING
COMMISSION

DEFENDANT GEORGE D. HUDGINS dba
GEORGE D. HUDGINS L.L.C.


_____/s/ Kathleen M. Banar_____
Kathleen M. Banar, Chief Trial Attorney
(Ill. Bar No. 6200597)
kbanar@cftc.gov (admitted *pro hac vice*)

_____/s/ Charles M. Meadows, Jr.
Charles M. Meadows Jr.
(TX Bar No.13886700)
cmeadows@meadowscollier.com

Kim G. Bruno, Counsel to the Director
(D.C. Bar No. 389899)
kbruno@cftc.gov (admitted *pro hac vice*)

Meadows, Collier, Reed, Cousins & Blau
L.L.P.
601 Main Street, Suite 3700
Dallas, TX 75202
Telephone: (214) 744-3700
Fax: (214) 747-3732

United States Commodity Futures Trading
Commission
Division of Enforcement
1155 21st Street, NW,
Washington, D.C. 20581
Telephone: (202) 418-5000
Fax: (202) 418-5531

14

# EXHIBIT A

# KELLY M. CRAWFORD, ESQ.
## Partner
## Scheef & Stone, L.L.P.
5956 Sherry Lane, Suite 1400
Dallas, Texas 75225
(214) 706-4200 telephone
(214) 706-4242 facsimile
Kelly.Crawford@ScheefandStone.com

Kelly Crawford, a *cum laude* graduate of the SMU School of Law, and AV Rated attorney, is now in his 22nd year of practicing law. Mr. Crawford continues to focus his practice on investment fraud and recovering stolen or misappropriated funds for investors. Mr. Crawford has worked extensively with the Securities and Exchange Commission, the United States Commodity Futures Trading Commission, the Department of Justice, and United States Marshalls.    Mr. Crawford has been appointed a Receiver in various investment fraud cases by a number of judges of the United States District Court for the Northern District of Texas.

### RECEIVERSHIP AND INVESTMENT FRAUD EXPERIENCE

**Securities and Exchange Commission v. Petrosite Assets, Inc., et al.:** (Judge Godbey); Civil Action No. 3:06CV-1611 in the United States District Court for the Northern District of Texas, Dallas Division – Appointed as Receiver in September, 2006 in multi-million dollar oil and gas and jewelry manufacturing investment scheme.

**U.S. Commodity Futures Trading Commission v. Premium Income Corporation, et al.:** (Judge Boyle); Civil Action No. 3-05CV-0416 in the United States District Court for the Northern District of Texas, Dallas Division– Appointed as Receiver in March, 2005 in $10 million foreign currency exchange scheme.  Return to investors exceeded 34 percent.

**Securities and Exchange Commission v. Premium Income Corporation, et al.:** (Judge Boyle); Civil Action No. 3-05CV-0415 in the United States District Court for the Northern District of Texas, Dallas Division (related to foregoing case brought by CFTC)  – Appointed as Receiver in March, 2005 in $10 million foreign currency exchange scheme.  Return to investors exceeded 39%.

**Securities and Exchange Commission v. C-Tech, L.L.P. and Robert Schlotterbeck;** (Judge Solis);Civil Action No. 3-01CV2542-P in the United States District Court for the Northern District of Texas, Dallas Division – Appointed as Receiver in $4 million oil and gas venture. Return to investors was more than 40 percent.

**Securities and Exchange Commission v. Resource Development International, LLC, et al.;** (Judge Buchmeyer); Civil Action No. 3:02-CV-0605-R in the United States District Court for the Northern District of Texas, Dallas Division – Currently serving as primary counsel to Receiver in $73 million Ponzi scheme involving more than 1,500 investors. Return to investors is currently unknown.

**Securities and Exchange Commission v. Benjamin Franklin Cook, individually and doing business as Dennel Finance Limited, et al.;** (Judge Buchmeyer); Civil Action No. 3:99 CV0571-R in the United States District Court for the Northern District of Texas, Dallas Division –Served as primary counsel to Receiver in $35 million Ponzi scheme where return to investors was approximately 63 percent.

**Diamond Benefits Life Insurance Company, in Receivership** -- Served as Texas counsel to the Special Deputy Receiver appointed by the Arizona Department of Insurance in insurance insolvency case in which claims exceed $22 million.

**American Bonding Company, in Receivership** -- Served as Texas counsel to the Special Deputy Receiver appointed by the Arizona Department of Insurance in defending the Receiver in lawsuit brought in federal court in Dallas.

**Great Global Life Insurance Company, in Receivership** – Served as Texas counsel to the Special Deputy Receiver appointed by the Arizona Department of Insurance with respect to ancillary receivership matter instituted in Texas.

**Aztar Casualty Insurance Company, in Receivership** -- Served as Texas counsel to the Special Deputy Receiver appointed by the Arizona Department of Insurance with respect to certain issues.

**Mutual Benefit Life Insurance Company, in Receivership** – Served as Texas counsel to Mutual Benefit Life Insurance Company prior to its insolvency and while it was in receivership in defending the company against claims brought in Texas against the company.

**Publications and Speeches**

• *Note, Domangue v. Eastern Airlines*, 722 F.2d 256 (5th Cir. 1984), 50 J. Air L. 375 (1985)

• Panelist on topic of Receiverships presented at the Annual Southwest Securities Enforcement Conference sponsored by The Fort Worth District Office of the Securities and Exchange Commission.

## Honors and Awards

• Awarded the Hatton W. Sumners scholarship to attend the SMU School of Law

• Editor in Chief of the Journal of Air Law and Commerce

• Order of the Coif

• Order of Barristers

• Awarded the Best Brief Award for the
Moot Court competition

• Appointed by the Governor of New Mexico to serve as an ex-officio member of the Board of Educational
Finance

## Education and Professional Background

• Admitted, Texas

• Fifth Circuit Court of Appeals

• Admitted, New Mexico

• J.D., cum laude, from Southern Methodist University in 1986.

• Undergraduate degree in government and journalism, cum laude, from New Mexico State University in
1982. Mr. Crawford served as Student Body President at NMSU and was an ex-officio member of the
Board of Regents.

## Reported Cases

Mr. Crawford's successful experience in handling lawsuits is reflected in the following reported cases in
which Mr. Crawford served as counsel:

• *Warfield v. Byron*, 436 F. 3d 551 (5th Cir. 2006).

• *Seawright v. Charter Furniture Rental, Inc.*, 39 F. Supp. 2d 795 (N.D. Tex. 1999), where the Court found
that "lead counsel for Charter, Kelly Crawford, is an experienced, able practitioner who specializes in the
area of commercial litigation, including employment disputes...The Court found the quality of their written
work to be excellent. Their rates...certainly comport with the going rate for attorneys in this district and
division with their qualifications and experience. In fact, the hourly rates are on the low side." 39 F.2d at
807.

• *Clark v. Fitzgibbons*, 105 F.3d 1049 (5th Cir. 1997).

• *Christopher v. Diamond Benefits Life Ins. Co.*, 35 F.3d 232 (5th Cir. 1994).

• *Capital Income Properties v. Blackmon*, 843 S.W.2d 22 (Tex. 1992).

• *Wal-Mart Stores, Inc. v. Alexander*, 827 S.W.2d 420 (Tex. 1992).

Case 6:08-cv-00817-LED   Document 256   Filed 06/09/2008   Page 19 of 19

# *Fee Schedule*

*Hourly Rates:*

| | |
|---|---|
| *Kelly Crawford, Receiver* | *$275* |
| *Charlene Koonce, Receiver's counsel* | *$225* |
| *Associate attorneys* | *$175 to $200* |
| *Legal Assistants* | *$100* |
| *Accountant – CPA (5 years or more)* | *$200* |
| *Accountant – CPA (Less than 5 years)* | *$175* |
| *Staff Accountants* | *$125* |
| *Computer Technicians* | *$100* |
| *Accounting administrative assistants* | *$80* |
| *Private Investigator – Certified Fraud Examiner* | *$100* |

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

FILED CLERK
U.S. DISTRICT COURT

2008 MAY 13  AM IC: 56

TEXAS EASTERN

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | unsealed ~~SUBMITTED UNDER SEAL~~ |
| Plaintiff, | |
| v. | MC 08-116 |
| GEORGE D. HUDGINS, individually and dba GEORGE D. HUDGINS, L.L.C. | CIVIL ACTION NO.: 6:08 cv 186 /82 |
| Defendants | COMPLAINT FOR PERMANENT INJUNCTION, CIVIL MONETARY PENALTIES, AND OTHER EQUITABLE RELIEF |

Plaintiff, Commodity Futures Trading Commission ("Commission"), by its attorneys, alleges as follows:

## I. SUMMARY

1.      From at least January 2005 to the present ("relevant period"), Defendant George D. Hudgins dba George D. Hudgins L.L.C. ("Hudgins") fraudulently solicited members of the general public to pool together millions of dollars to trade futures contracts ("futures") and options on futures contracts ("options") in violation of the anti-fraud provisions of the Commodity Exchange Act ("CEA" or "the Act"), as amended, 7 U.S.C. §§ 1 *et seq.* (2002), and Commission Regulations ("Regulations"), 17 C.F.R. §§ 1.1 *et seq.* (2008), promulgated thereunder.

2.      In order to induce current and prospective pool participants to invest or reinvest, Hudgins, as the unregistered commodity pool operator ("CPO") and general partner for the pool, 3737 Financial L.P. aka Hudgins Group aka Hudg-Investments ("3737 Financial" or the

"commodity pool"), made numerous material misrepresentations and omissions, including, among others:

> (a) falsely representing that the commodity pool had a successful track record trading futures and options since 2000, when, in fact, the commodity pool was not even in existence until 2004;
>
> (b) falsely representing, and grossly inflating, the total amount of funds under management and traded in the commodity pool;
>
> (c) falsely representing the commodity pool's purported historical profitability, and grossly inflating any such profitability, when, in fact, Hudgins' trading in futures and options resulted in losses exceeding $28 million since December 2003;
>
> (d) failing to disclose that Hudgins was trading pool participant money in his own personal trading account and not in any trading account opened in the name of the commodity pool; and
>
> (f) issuing false statements regarding the purported "returns" of the commodity pool in monthly and/or quarterly newsletters and other promotional material.

3.    As a result, Defendant has engaged, is engaged, or is about to engage in acts and practices in violation of Sections 4o(1), 4b(a)(2)(i)-(iii), 4c(b), and 4m(1) of the Act, 7 U.S.C. §§ 6o(1), 6(b)(a)(2)(i)-(iii), 6c(b) and 6m(1), and Regulations 4.41(a) and 33.10(a)-(c), 17 C.F.R. §§ 4.41(a) and 33.10(a)-(c).

4.    Accordingly, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, the Commission brings this action to enjoin Defendant's unlawful acts and practices and to compel his compliance with the Act and Regulations. In addition, the Commission seeks civil monetary

penalties and other equitable relief, including restitution to pool participants, disgorgement of Defendant's ill-gotten gains, a permanent trading ban, and such other relief as the Court may deem necessary or appropriate.

5.      Unless permanently restrained and enjoined by the Court, Defendant is likely to continue to engage in the illegal acts and practices alleged in this Complaint, as more fully described below.

## II.  JURISDICTION AND VENUE

6.      The Act establishes a comprehensive system for regulating the purchase and sale of futures and options. The Court has jurisdiction over this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, which authorizes the Commission to seek injunctive relief against any person whenever it shall appear to the Commission that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.

7.      Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e), in that Defendant is found in, inhabits, or transacts business in this District, and the acts and practices in violation of the Act and Regulations have occurred, are occurring, or are about to occur within this District, among other places.

## III.  PARTIES

8.      The **Commodity Futures Trading Commission** is a federal independent regulatory agency charged with the administration and enforcement of the CEA, 7 U.S.C. §§ 1 *et seq*., and the Regulations thereunder, 17 C.F.R. §§ 1.1 *et seq*.

9.      **George D. Hudgins** is an individual who resides at 3737 Skyline Drive, Nacogdoches, Texas. Hudgins also does business as "George D. Hudgins LLC," a Texas limited

liability company, created on November 12, 2004 and also located at 3737 Skyline Drive, Nacogdoches, Texas. Hudgins, individually and dba as George D. Hudgins LLC (the general partner of 3737 Financial), controls the day-to-day operations of the commodity pool, including making the commodity pool's trading decisions and opening personal trading accounts at a registered futures commission merchant ("FCM") for the purpose of trading on behalf of the commodity pool. Hudgins has never been registered with the Commission as a CPO or in any other capacity.

## IV. **STATUTORY BACKGROUND**

10.     A "commodity pool" is defined in Regulation 4.10(d)(1), 17 C.F.R. § 4.10(d)(1), as any investment trust, syndicate or similar form of enterprise operated for the purpose of trading commodity interests.

11.     A "commodity pool operator" is defined in Section 1a(5) of the Act, 7 U.S.C. § 1(a)(5), as any person engaged in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise, and who, in connection therewith, solicits, accepts or receives from others, funds, securities, or property, either directly or through capital contributions, the sale of stock or other forms of securities or otherwise, for the purpose of trading in any commodity for future delivery on or subject to the rules of any contract market or derivatives transaction execution facility.

## V. **FACTS**

### A.     **Hudgins' Rosenthal Collins Group Accounts**

12.     3737 Financial is a Texas limited partnership created on November 12, 2004 and located at 3737 Skyline Drive, Nacogdoches, Texas. Hudgins receives, accepts and pools funds

from members of the public to trade futures and options through 3737 Financial. Hudgins is the unregistered CPO of 3737 Financial.

13.     Rather than opening a commodity trading account with a FCM in the name of the commodity pool -- here, 3737 Financial -- Hudgins opened multiple trading accounts in his own name and traded the funds invested in 3737 Financial in these accounts.

14.     On December 15, 2003, Hudgins opened a trading account (hereinafter, Account "00") in the name "George D. Hudgins," at Rosenthal Collins Group L.L.C. ("RCG"), a registered FCM. Through Account "00," Hudgins traded futures and options, including contracts for silver, sugar, and the S&P 500 index.

15.     Thereafter, from 2005 to 2007, Hudgins opened a total of six additional trading accounts with RCG in the name "George D. Hudgins" (hereinafter, Accounts "01," "02," "03," "04," "05," and "06").

> (a) Account "01" was opened in November 2005. Through that Account, Hudgins traded futures and options, including contracts for T- Bonds, silver, crude oil and the S&P 500 index.
>
> (b) Accounts "02" and "03" were opened in January 2006. Hudgins did no trading in Account "02". Through Account "03", Hudgins traded futures and options in the S&P 500 index.
>
> (c) Account "04" was opened in September 2006. Through that Account, Hudgins traded futures in the S&P 500 index.
>
> (d) Account "05" was opened in September 2007. Through that Account, Hudgins traded futures, including contracts for crude oil, cotton, the S&P 500 index, and coffee.

(e) Account "06" was opened in July, 2004. Through that Account, Hudgins

traded futures, including contracts for crude oil, NASDAQ index and S&P 500

index.

## B.  Hudgins Operates 3737 Financial as a Commodity Pool

16.    On November 14, 2004, Hudgins created 3737 Financial. Beginning in at least

January 2005, Hudgins began operating, and soliciting the public to invest, or remain invested, in

the commodity pool; *i.e.*, he solicits individual participants to write checks to 3737 Financial,

tells them that their money will be pooled with funds from other pool participants and that

Hudgins will use the money to trade futures and options contracts on behalf of all pool

participants through a RCG trading account.

17.    Pool participants' checks are deposited in 3737 Financial's bank account at

BancorpSouth in Nacogdoches, Texas. Thereafter, on information and belief, Hudgins transfers

some or all of pool participants' funds from 3737 Financial's bank account into a different bank

account in the name of George D. Hudgins located at BancorpSouth in Nacogdoches, Texas, and,

subsequently, wires some or all of pool participants' funds from that bank account at

BancorpSouth to his personal trading accounts at RCG located in Chicago, Illinois, through

which Hudgins trades commodity futures and options.

18.    Contemporaneously with investing in the commodity pool, pool participants enter

into a one page agreement with 3737 Financial "for the purpose of trading S&P [500] future[s]

and other investments as George D. Hudgins, General Partner, sees fit." The one page agreement

also provides "Hudgins will trade for [investor's name] benefit as a partner, and profits will by

split 80% [investors name] and 20% Hudgins."

C.    **Hudgins' Fraudulent Solicitations of Participants**

19.    Since as early as January 2005, Hudgins solicited pool participants and

prospective pool participants to invest, or remain invested, in the commodity pool through

promotional packets, newsletters, group presentations and face-to-face meetings. In these

solicitation materials and presentations, Hudgins makes numerous material misrepresentations

and omissions to induce pool participants and prospective participants, to invest, or remain

invested in the fund, including false representations about the length of time the pool had been in

existence, the historical profitability of the pool, and the size of the commodity pool's assets.

*(i).    January 2005 Promotional Packet*

20.    For example, in January 2005, Hudgins created and provided to at least one pool

participant a promotional packet entitled "Hudg-Investments[:] Making Money in a Bull or Bear

Market," which discussed, among other things, the purported historical performance of the

commodity pool. In the promotional packet, Hudgins stated that the commodity pool had gross

returns of:

- 99% for 2000,
- 55% for 2001,
- 57% for 2002,
- 46% for 2003,
- 47% for 2004, and
- 8.13% for January, 2005.

21.    These statements are false and misleading because:

(a) 3737 Financial did not exist until November 2004, and thus the commodity

pool had no "returns" during the time period 2000 to October, 2004; and

(b) for the years 2003, 2004, and 2005, RCG trading account records in the name

of George D. Hudgins show that, rather than having the net returns claimed, the

-7-

trading accounts suffered losses in: December 2003 of $42,256.26; the full 2004 calendar year of $1,614,307.97; and January 2005 of $141,780.51.

22.     Hudgins further represented in the promotional packet that 3737 Financial invests in S&P 500 futures, currencies, U.S. treasury bonds, gold and silver and, as of January 2005, had an investment portfolio of approximately $23 Million. In fact, as of January 2005, the only accounts in existence at RCG in the name "George D. Hudgins" -- Account "00" and Account "06" – only had a net value of $75,713.86.

23.     Hudgins made these representations regarding the commodity pool in the promotional packet knowing them to be false or with reckless disregard as to their truth.

### (ii).     *Newsletters*

24.     Hudgins created and provided to pool participants and prospective pool participants monthly and quarterly newsletters entitled "The Hudg-Report" that discussed the purported historical performance of the commodity pool. In particular in the February 2005, February 2006 and Fourth Quarter 2006 Hudg-Reports, Hudgins represented, among other things, that the commodity pool had a net profit of:

- 8.13% for January 2005,
- approximately 3% for January 2006, and
- 29.27% for Fourth Quarter 2006, respectively.

25.     Similar to the returns listed in the promotional packet, these representations were false and misleading. RCG trading account records in the name George D. Hudgins show a loss in January 2005 of $141,780.51, a loss in January 2006 of $661,977.71 and a loss in Fourth Quarter 2006 of $988,157.24.

26.     Hudgins made these representations regarding the commodity pool in the newsletters knowing them to be false or with reckless disregard as to their truth.

#### *(iii).* *January 2007 Presentation*

27.    In January, 2007 Hudgins made a presentation during an annual meeting of pool participants and prospective pool participants in Nacogdoches, Texas (the "January 2007 presentation"). During the presentation, Hudgins made, among others, the following material misrepresentations and omissions:

> (a) Hudgins represented that the commodity pool had a net profit of 99% for
>
> 2000, 54.96% for 2001, 57.12% for 2002, 45.86% for 2003 and 46.79% for 2004.
>
> These representations are false and misleading for the reasons set forth in
>
> paragraph 21, above. Additionally, Hudgins represented that the commodity pool
>
> had profits of 52.33% for 2005 and 22.5% for 2006. These representations are
>
> false because in 2005 and 2006 the RCG trading accounts suffered losses of
>
> $9,445,989.11 and $11,192,620.05, respectively;
>
> (b) Hudgins represented that the commodity pool, and his trading on behalf of the
>
> commodity pool, did not need to be regulated, but failed to disclose that in fact
>
> the operation of commodity pools is regulated by the Commission and that he was
>
> required to be registered as a CPO;
>
> (c) Hudgins represented that the commodity pool's trading account was at RCG,
>
> but failed to disclose that no 3737 Financial account existed at RCG and that the
>
> only accounts at RCG were Hudgins' personal trading accounts;
>
> (d) Hudgins represented that, as of January 2007, 3737 Financial had an
>
> investment portfolio of approximately $80 Million and that there were about 100
>
> pool participants. In fact, at that time, the net value of Hudgins' trading accounts
>
> at RCG in the name of George D. Hudgins was negative $100,199.38.

28.     Hudgins made these representations regarding the commodity pool during the presentation knowing them to be false or with reckless disregard as to their truth.

### *(iv).     February 2008 Meeting with Three Prospective Pool Participants*

29.     In or about January 2008, one prospective pool participant learned about Hudgins and the commodity pool through several pool participants. The prospective pool participant reviewed the Hudg-Report newsletters dated February 2005, February 2006, Second Quarter 2006, Third Quarter 2006 and Fourth Quarter 2006 as well as the January 2005 promotional packet that discussed, among other things, the purportedly large returns on investments in the commodity pool.

30.     This prospective pool participant also learned that Hudgins had a DVD recording of the January 2007 presentation, to pool participants and prospective pool participants.

31.     The prospective pool participant requested via telephone and obtained via the U.S. mail a copy of the DVD. After reviewing it, the prospective pool participant and two other prospective pool participants met with Hudgins in early February 2008 (the "February 2008 meeting") in his office located at 3737 Skyline Drive, Nacogdoches, Texas, the same address as his primary residence and 3737 Financial.

32.     At this meeting, Hudgins told the three prospective pool participants that he trades in futures, including futures on crude oil, gold, currency, pork bellies and grain, and that since 2000, the commodity pool had made a profit each year. In particular, Hudgins stated that in 2007, the commodity pool made a net profit of 57%, that there were at least 200 individuals invested in the commodity pool, and that while several of these investors had hundreds of thousands of dollars invested in 3737 Financial, others had millions of dollars invested.

33.    Hudgins also represented during the February 2008 meeting that 3737 Financial had a present value of approximately $200 Million, that half of that consisted of Hudgins' personal money and that all trades for the commodity pool were cleared through RCG. He represented further that in January 2007 the pool had a value of $100 Million.

34.    Hudgins told the three prospective pool participants that he required each to invest a minimum of $100,000 in the commodity pool. Hudgins also stated that his operating fee was 20% of net profit.

35.    Hudgins informed the three prospective pool participants that because 3737 Financial was now worth $200 Million it was getting too big to handle. As such he was "fixing to shut this thing down," "stop taking anymore money," and even "start paying out some of the profits" rather than reinvest them into 3737 Financial.

36.    During the meeting, two of the prospective pool participants each wrote a check payable to 3737 Financial in the amount of $100,000. Hudgins, as general partner of 3737 Financial, then executed separate one page agreements with each of the investors acknowledging receipt of the $100,000 and agreeing to split the profits with 80% going to the pool participants and 20% going to Hudgins. At least one of the checks was subsequently deposited in the account of 3737 Financial at BancorpSouth Bank, Nacogdoches, Texas.

37.    Similar to the representations Hudgins made in the promotional packet, the newsletters and during the January 2007 presentation, the representations made at the February 2008 meeting were false and misleading. In particular, rather than making a profit of 57% for 2007, RCG trading account records in the name George D. Hudgins show that the commodity pool suffered a loss in 2007 of $5,077,748.50. Further, as of January 31, 2008, the total net value of the investments in the RCG accounts in the name George. D. Hudgins was $4,498,850.45

rather than the approximately $200 Million that Hudgins represented at the February 2008 meeting.

38.     Hudgins made these representations regarding the commodity pool in the February 2008 meeting knowing them to be false or with reckless disregard as to their truth.

### D.     Value of Hudgins' Accounts at RCG

39.     As of January 31, 2007, the total net value of the investments in RCG accounts in the name George D. Hudgins was negative $100,199.38; *i.e.*, the accounts were operating at a loss. This is in stark contrast to Hudgins' representation at the January 2007 presentation to pool participants and prospective pool participants that the commodity pool contained, at that time, approximately $80 Million, and the February 2008 meeting in which Hudgins represented the value of the commodity pool to have been $100 million in January 2007.

40.     As of January 31, 2008, the total net value of the investments in the RCG accounts in the name George D. Hudgins was $4,498,850.45. This is in stark contrast to Hudgins' representation at the February 2008 meeting that the commodity pool contained approximately $200 Million.

41.     The relationship between what Hudgins told pool participants and prospective pool participants in his varied solicitations and actual RCG trading account values is detailed in the chart below:

| Time period | Hudgins' Misrepresentations as to profit as a percent | Actual losses |
| --- | --- | --- |
| 2000 | 99% | 3737 Financial did not exist |
| 2001 | 55% | 3737 Financial did not exist |
| 2002 | 57% | 3737 Financial did not exist |
| 2003 | 46% | 3737 Financial did not exist; however, losses suffered in the RCG accounts in |

| | | December 2003 were $42,256.26 |
|---|---|---|
| 2004 | 46.79% | 3737 Financial did not exist until November 2004; however, losses suffered in the RCG accounts were $1,614,307.97 |
| January 2005 | 8.13% | Losses suffered in the RCG accounts were $141,780.51 |
| 2005 | 52.33% | Losses suffered in the RCG accounts were $9,445,989.11 |
| January 2006 | 3% | Losses suffered in the RCG accounts were $661,977.71 |
| Fourth Quarter 2006 | 29.27% | Losses suffered in the RCG accounts were $988,157.24 |
| 2006 | 22.5% | Losses suffered in the RCG accounts were $11,192,620.05 |
| 2007 | 57% | Losses suffered in the RCG accounts were $5,077,748.5 |

42.    While on April 30, 2008, the RCG accounts in the name of George D. Hudgins

show a net liquidating value of $8,197,044.94, in actuality Hudgins has lost a total of

$28,966,527.71 in the RCG accounts from December 2003 through April 2008 trading futures

and options.

## VI. **VIOLATIONS OF THE ACT AND REGULATIONS**

### **COUNT ONE**

#### **Fraud By Commodity Pool Operator**

##### **(Violations of Section 4o(1) of the Act, 7 U.S.C. § 6o(1), and Regulation 4.41(a), 17 C.F.R. § 4.41(a))**

43.    Paragraphs 1 through 42 are realleged and incorporated herein.

44.    Section 4o(1) of the Act, 7 U.S.C. § 6o(1), prohibits CPOs from using the mails or

any other means of interstate commerce to:

> (A) employ any device, scheme, or artifice to defraud any client or
> participant or prospective client or participant; or
>
> (B) engage in any transaction, practice, or course of business which
> operates as a fraud or deceit upon any client or participant or
> prospective client or participant.

45.    Regulation 4.41(a) provides that no CPO may advertise in a manner that:

> (1) Employs any device, scheme or artifice to defraud any participant or client or
> prospective participant or client; or
>
> (2) Involves any transaction, practice, or course of business which operates as a
> fraud or deceit upon any participant or client or any prospective participant or
> client.

46.    During the relevant period, Hudgins acted as a CPO by soliciting, accepting or

receiving funds from others and engaging in a business that is of the nature of an investment

trust, syndicate, or similar form of enterprise, for the purpose of trading in futures and options on

futures.

47.    As set out in paragraphs 1 through 42, during the relevant period, Hudgins

employed a device, scheme or artifice to defraud pool participants and prospective pool

participants or engaged in a transaction, practice or course of business, including through

advertising in newsletters, seminars, and promotional packages, which operated as a fraud or

deceit upon commodity futures and options pool participants and prospective commodity futures

and options pool participants in violation of Section 4o(1) of the Act, 7 U.S.C. § 6o(1) and

Regulation 4.41(a), 17 C.F.R. § 4.41.(a).

48.     Each misrepresentation or omission of material fact, actual or attempted act to

cheat, defraud, or deceive, including but not limited to those specifically alleged herein, is

alleged as a separate and distinct violation of Section 4o(1) of the Act, 7 U.S.C. § 6o(1), and

Regulation 4.41(a), 17 C.F.R. § 4.41(a).

## COUNT TWO

### Fraud in Connection with a Futures Contract

### (Violations of Sections 4b(a)(2)(i)-(iii) of the Act, 7 U.S.C. §§ 6b(a)(2)(i)-(iii))

49.     Paragraphs 1 through 48 are realleged and incorporated herein.

50.     Section 4b(a)(2) of the Act, 7 U.S.C. § 6b(a)(2), makes it unlawful

> for any person, in or in connection with any order to make, or the
> making of, any contract of sale of any commodity for future
> delivery, made, or to be made, for or on behalf of any other person
> if such contract for future delivery is or may be used for (A)
> hedging any transaction in interstate commerce in such commodity
> or the products or byproducts thereof, or (B) determining the price
> basis of any transaction in interstate commerce in such
> commodity, or (C) delivering any such commodity sold, shipped,
> or received in interstate commerce for the fulfillment thereof—(i)
> to cheat or defraud or attempt to cheat or defraud such other
> person; (ii) willfully to make or cause to be made to such other
> person any false report or statement thereof, . . .[or]; (iii) willfully
> to deceive or attempt to deceive such other person by any means
> whatsoever in regard to any such order or contract or disposition
> or execution of any such order or contract, or in regard to any act
> of agency performed with respect to such order or contract for
> such person.

51.     As set out in paragraphs 1 through 42, during the relevant period, Hudgins

cheated or defrauded or attempted to cheat or defraud, willfully made or caused to be made false

reports about the purported profitability of 3737 Financial in monthly or quarterly newsletters and other promotional material, and willfully deceived or attempted to deceive pool participants and prospective pool participants by making misrepresentations of material facts, and omitting material facts in violation of Sections 4b(a)(2)(i)-(iii) of the Act, 7 U.S.C. §§ 6b(a)(2)(i)-(iii).

52.     Each misrepresentation or omission of material fact, actual or attempted act to cheat, defraud, or deceive, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Section 4b(a)(2)(i)-(iii) of the Act, 7 U.S.C. § 6b(a)(2)(i)-(iii).

## COUNT THREE

### Fraud in Connection with an Options Contract

### (Violations of Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and Regulations 33.10(a)-(c), 17 C.F.R. §§ 33.10(a)-(c))

53.     Paragraphs 1 through 52 are realleged and incorporated herein.

54.     Section 4c(b) of the Act, 7 U.S.C. § 6c(b), makes it unlawful to offer to enter into, enter into, or confirm the execution of, any transaction involving any commodity regulated under the Act which is of the character of, or is commonly known to the trade as, an "option," "privilege," "indemnity," "bid," "offer," "put," "call," "advance guaranty," or "decline guaranty," contrary to any rule, regulation, or order of the Commission prohibiting any such transaction or allowing any such transaction under such terms and conditions as the Commission shall prescribe.

55.     Regulations 33.10(a)-(c), 17 C.F.R. §§ 33.10(a)-(c), make it unlawful for any person, directly or indirectly, (a) to cheat or defraud or attempt to cheat or defraud any person; (b) to make or cause to be made any false report or statement, or (c) to deceive or attempt to

-16-

deceive any other person by any means whatsoever, in or in connection with an offer to enter into, the entry into, or the confirmation of the execution of, any commodity option transaction.

56.    As set out in paragraphs 1 through 42, during the relevant period, Hudgins violated Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and Sections 33.10(a)-(c) of the Regulations, 17 C.F.R. §§ 33.10(a)-(c), in that, in connection with offers to enter into, the entry of, or the confirmation of the execution of, commodity options transactions, Hudgins cheated, defrauded, or deceived, or attempted to cheat, defraud or deceive, other persons, by making false, deceptive or misleading representations of material facts and by failing to disclose material facts, and by making or caused to be made false reports about the purported profitability of 3737 Financial in monthly or quarterly newsletters and other promotional material.

57.    Each misrepresentation or omission of material fact, actual or attempted act to cheat, defraud, or deceive, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and Regulations 33.10(a)-(c), 17 C.F.R. §§ 33.10(a)-(c).

## COUNT FOUR

### Failure to Register As a Commodity Pool Operator

### (Violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1))

58.    Paragraphs 1 through 57 are realleged and incorporated herein.

59.    Section 4m(1) of the Act, 7 U.S.C § 6m(1), provides that it is unlawful for any CPO, unless registered under the Act, to make use of the mails or any means or instrumentality of interstate commerce in connection with his business as a CPO.

60.    As set out in paragraphs 17 and 31, during the relevant period, Hudgins has used the mails or instrumentalities of interstate commerce in or in connection with a commodity pool

as a CPO while failing to register as a CPO, in violation of Section 4m(1) of the Act, 7 U.S.C. §
6m(1).

61.    Hudgins does not qualify for a registration exemption under either the Act or
Regulations.

## VII. **RELIEF**

WHEREFORE, the Commission respectfully requests that the Court, as authorized by
Section 6c of the Act, 7 U.S.C. § 13a-1, and pursuant to its own equitable powers, enter:

(a)    an order finding that Defendant violated Sections 4o(1), 4b(a)(2)(i)-(iii), 4c(b) and
4m(1) of the Act, 7 U.S.C. §§ 6o(1), 6b(a)(2)(i)-(iii), 6c(b) and 6m(1) and Regulations 4.41(a)
and 33.10(a)-(c), 17 C.F.R. §§ 4.41(a) and 33.10(a)-(c);

(b)    an order of permanent injunction prohibiting Defendant, and any other person or
entity associated with him, including any successor thereof, from engaging in conduct violative
of the sections of the Act and Regulations that he has been alleged to violate;

(c)    an order of permanent injunction prohibiting Defendant from engaging, directly
or indirectly, in any activity related to trading in any commodity, as that term is defined in
Section 1a(4) of the Act, 7 U.S.C. § 1a(4) (commodity interest), including but not limited to, the
following:

1.    trading on or subject to the rules of any registered entity, as that term is
defined in Section 1a(29) of the Act, 7 U.S.C. § 1a(29);

2.    engaging in, controlling or directing the trading for any commodity
interest account for or on behalf of any other person or entity, whether by power of attorney or
otherwise;

3.      soliciting or accepting any funds from any person in connection with the purchase or sale of any commodity interest;

4.      entering into any commodity interest transactions for his own personal account, for any account in which he has a direct or indirect interest and/or having any commodity interests traded on his behalf; and

5.      engaging in any business activities related to commodity interest trading.

(d)      an order of permanent injunction from applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14 (a)(9), 17 C.F.R. § 4.14(a)(9), or acting as a principal, agent or any other officer or employee of any person registered, exempted from registration or required to be registered with the Commission, except as provided for in Regulation 4.14 (a)(9), 17 C.F.R. § 4.14(a)(9);

(e)      an order directing Defendant, as well as any other person or entity associated with him, including any successor thereof, to disgorge, pursuant to such procedure as the Court may order, all benefits received from the acts or practices which constitute violations of the Act or Regulations, as described herein, and interest thereof from the date of such violations;

(f)      an order directing Defendant, as well as any other person or entity associated with him, including any successor thereof, to make full restitution, pursuant to such procedure as the Court may order, to every pool participant whose funds were received by them as a result of acts and practices which constitute violations of the Act and Regulations, as described herein, and interest thereon from the date of such violations;

(g)    an order imposing upon Defendant a civil penalty pursuant to § 6c(d)(1), 7 U.S.C.

13a-1 and Regulation 143.8, 17 C.F.R. § 143.8; and

(h)    an order for such other and further remedial ancillary relief as the Court may deem

appropriate.

May /3, 2008                         Respectfully submitted,

                                    PLAINTIFF UNITED STATES COMMODITY
                                    FUTURES TRADING COMMISSION

                                    Kathleen M. Banar, Chief Trial Attorney
                                    (Ill. Bar No. 6200597)
                                    *kbanar@cftc.gov* (*pro hac vice* admission pending)

                                    Kim G. Bruno, Counsel to the Director
                                    (D.C. Bar No. 389899)
                                    *kbruno@cftc.gov* (*pro hac vice* admission pending)

                                    United States Commodity Futures Trading
                                    Commission
                                    Division of Enforcement
                                    1155 21st Street, NW,
                                    Washington, D.C. 20581
                                    Telephone: (202) 418-5000
                                    Fax: (202) 418-5531

## CERTIFICATE OF SEALING

Pursuant to Local Rule CV-5(a)(7), I certify that on May 13, 2008, Plaintiff's filed a

Motion to Temporarily Seal the Docket and File in the above captioned action.

Kathleen M. Banar

ORIGINAL

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

COMMODITY FUTURES TRADING
COMMISSION,

    Plaintiff,

v.

GEORGE D. HUDGINS, individually and dba
GEORGE D. HUDGINS, L.L.C

    Defendant

MISC. ACTION NO. 08-116 _____

### NOTICE OF APPOINTMENT OF RECEIVER

Pursuant to the provisions of 28 U.S.C. § 754, Kelly M. Crawford provides notice of his

appointment as Receiver for George D. Hudgins, individually and dba George D. Hudgins, LLC.

True and correct copies of the Complaint filed by the Commodities and Futures Trading

Commission, and the Order appointing Receiver are attached hereto as exhibits.

KELLY M. CRAWFORD,
As Receiver for George D. Hudgins., et al.

FILED

JUN 18 2008

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

1

# KELLY M. CRAWFORD

RECEIVER FOR GEORGE D. HUDGINS, INDIVIDUALLY AND DBA
GEORGE D. HUDGINS, LLC

5956 SHERRY LANE, SUITE 1400                           TELE: 214/706-4200
DALLAS, TEXAS 75225                                    FAX:  214/706-4242

June 12, 2008

***Via Overnight Delivery***
U.S. District Court Clerk
District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street, Lockbox 18
Wilmington, Delaware 19801

**U. S. DISTRICT COURT - DE** _ 1  1  6
**MISC. CASE #_____**

Re:    *Commodity Futures Trading Commission v. George D. Hudgins, individually and
       dba George D. Hudgins, LLC*, Civil Action No. 6:08-cv-187, pending in the
       United States District Court for the Eastern District of Texas, Tyler Division

Dear Sir or Madam:

Pursuant to 28 U.S.C. § 754, please find enclosed three copies of the following:

*Notice of Appointment of Receiver*; with true and correct copies of the Complaint filed by
Securities and Exchange Commission, and the Order appointing Temporary Receiver
attached as exhibits.

Under 28 U.S.C. § 754, a federal receiver appointed in one district may sue in any federal
district court and/or be vested with complete jurisdiction and control of all such property in that
district. However, Section 754 requires that the Receiver file, within ten (10) days of his/her
order of appointment, copies of the complaint and order of appointment in the district court for
each district in which the receiver plans to sue or the subject property is located. Based on past
experience, these are normally filed as miscellaneous filings. Accordingly, **please file these
documents, including this cover letter, and return a file-stamped copy to me via the self-
addressed, stamped envelope provided.**

Also please find enclosed a check in the amount of $39.00 for the necessary filing fee
under 28 U.S.C. § 754. Should this fee be inadequate, please file the documents (since there is a
short time frame for filing) and contact me regarding the proper fee. I will send the necessary
fee immediately. Thank you for your assistance in this matter and please do not hesitate to
contact me should you have any question at (214) 706-4200 or (214) 706-4242 (fax).

Sincerely,

Kelly M. Crawford, Receiver

**2008 JUN 18  AM 10: 16**

Enclosure

DISTRICT OF DELAWARE
CLERK U.S. DISTRICT COURT
FILED